Kent L. Christiansen (#04207)
**SAGE LAW PARTNERS, PLLC**
Station Park Office Plaza
140 North Union Avenue, Suite 220
Farmington, UT  84025
Telephone: (801) 438-7120
Facsimile: (801) 438-7121
Email: kchristiansen@sagelawpartners.com

*Attorneys for Debtor*

---

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In Re:<br><br>FUELD FILMS, INC.,<br><br>Debtor | Bankruptcy Case No.  18-24652<br><br>**CHAPTER 11**<br><br>**(Small Business Case)**<br><br>JUDGE: KEVIN R. ANDERSON<br><br>[Filed Electronically] |

---

## CHAPTER 11 PLAN DATED MAY 20, 2019

---

Fueld Films, Inc. (the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case, by and through its counsel, hereby proposes its Plan of Reorganization (the "Plan") under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

1

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| ARTICLE 1 | SUMMARY | 3 |
| ARTICLE 2 | DEFINITIONS | 3 |
| ARTICLE 3 | TREATMENT OF ADMINISTRATIVE EXPENSES | 7 |
| ARTICLE 4 | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 8 |
| ARTICLE 5 | IMPAIRMENT OF CLAIMS | 11 |
| ARTICLE 6 | SPECIAL PROVISIONS FOR DISPUTED CLAIMS | 11 |
| ARTICLE 7 | MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN | 12 |
| ARTICLE 8 | LEASES AND EXECUTORY CONTRACTS | 14 |
| ARTICLE 9 | PAYMENTS | 14 |
| ARTICLE 10 | BAR DATES, DEADLINES, OBJECTION TO CLAIMS | 15 |
| ARTICLE 11 | EFFECT OF CONFIRMATION | 16 |
| ARTICLE 12 | GUARANTOR AND THIRD-PARTY LIABILITY | 17 |
| ARTICLE 13 | MODIFICATION OF PLAN | 17 |
| ARTICLE 14 | DEFAULT | 18 |
| ARTICLE 15 | RETENTION OF JURISDICTION | 18 |
| ARTICLE 16 | FINAL DECREE | 19 |
| ARTICLE 17 | CLAIMS RETAINED UNDER THE PLAN | 19 |
| ARTICLE 18 | MISCELLANEOUS | 20 |

# ARTICLE 1

# SUMMARY

This Plan of Reorganization under chapter 11 of the Bankruptcy Code proposes to pay creditors of Debtor from cash flow from operations and future income.

This Plan provides for 2 classes of secured claims - *Classes S1 and S2*; 2 classes of unsecured claims - *Classes U1 and U2*; 2 classes of tax claims - *Classes T1 and T2*; 1 class of disputed claims - *Class D1*; and 1 class of equity security holders - *Class E1*. Unsecured creditors holding allowed claims are anticipated to receive distributions. This Plan also provides for the payment of administrative and priority claims to the extent permitted by the Code or the claimant's agreement.

A Disclosure Statement that provides more detailed information regarding this Plan, the risks associated with the Plan, and the rights of creditors and equity security holders will be circulated with the Plan. Your acceptance or rejection of the Plan is not being solicited. No such solicitation can occur until the Disclosure Statement has been approved by the Bankruptcy Court. **YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

# ARTICLE 2

# DEFINITIONS

2.1. "Allowed Administrative Expense" means any cost or expense of the Estate that is allowed under § 503(b) of the Bankruptcy Code by a final and non-appealable order of the Court

after notice and a hearing and shall also include any fees and charges assessed against the Estate under 28 U.S.C. § 1930.

2.2. "Allowed Claim[1]" means any debt represented by a proof of claim that is filed (including a claim that is deemed filed under § 1111(a) of the Bankruptcy Code) that is allowed under § 502(a) of the Bankruptcy Code and is not a Disputed Claim.[2]

2.3. "Allowed Interest" means any interest represented by a timely[3] proof of claim that is filed (including an interest that is deemed filed under § 1111(a) of the Bankruptcy Code) that is allowed under § 502(a) of the Bankruptcy Code and is not a Disputed Interest.

2.4. "Allowed Secured Claim" means an Allowed Claim secured by a lien on property of the Estate.

2.5. "Allowed Unsecured Claim" means an Allowed Claim that is not secured by a lien on property of the Estate.

2.6. "Bankruptcy Code" means Title 11 of the United States Code.

2.7. "Claim" means any claim as defined by § 101(5) of the Bankruptcy Code.

---

[1] The fact that a Claim may be specifically referenced and/or its treatment specified under this Plan does not mean that it is "expressly allowed." Rather, all Claims referenced or discussed in this Plan are subject to potential objection unless the Plan states expressly that the Claim is or shall be allowed, and the amount of the allowed Claim is specified.

[2] Except as otherwise provided in the Plan, the Debtor reserves its right to object to Claims it has listed in its Schedules notwithstanding that the Schedules may not identify the Claim as disputed, contingent or unliquidated. The Debtor further reserves the right to amend its Schedules to delete any reference to listed Claims, to adjust the amount of the listed Claim and/or to identify any listed Claim as disputed, contingent or unliquidated.

[3] A proof of claim is timely filed only if (a) it is filed on or before the applicable Bar Date, or (b) if filed after the applicable Bar Date, on or before the Effective Date the Court has entered an order permitting the holder of the Claim to file a late-filed proof of claim.

2.8. "Class" means any group of Class or Equity Interests classified by the Plan as set forth in Article 4 of this Plan.

2.9. "Confirmation" means the entry of the order of the Court confirming this Plan.

2.10. "Confirmation Hearing" means the first date set for hearing on the confirmation of the Plan, if referring to a deadline by which certain events will occur; otherwise, it also incorporates all subsequent continuances of the Confirmation Hearing.

2.11. "Court" means the United States Bankruptcy Court for the District of Utah.

2.12. "Debtor" means Fueld Films, Inc.

2.13. "Debtor's Projects" means all currently commenced and to-be-completed film production projects and ventures, including but not limited to, the Big O Tires national campaign, the Acura project from Canada to shoot in either Utah or Texas, and a proposed 4-spot campaign for Idaho State University. Debtor is also in the final bidding stages for a campaign for Micron shooting in Portland, Oregon.

2.14. "Disputed Claim" means any claim or interest which is identified as disputed or any claim for which an objection has been or may be filed hereafter by the Debtor, the Reorganized Debtor, or any other party in interest.

2.15. "Effective Date" means 21 days after Confirmation.

2.16. "Estate" means the estate created and described under § 541 of the Bankruptcy Code.

2.17. "Estate Cash" means all cash in the possession of the Debtor that is property of the Estate whether it is unencumbered or represents the "cash collateral" of a holder of an Allowed Secured Claim.

2.18. "Equity Interest" means any ownership interest in the Debtor.

2.19. "Ordinary Course Administrative Expense" means any Administrative Expense that has been incurred in the ordinary course of the Debtor's business and that would be otherwise payable without Court approval but is not due by its terms until at, or after, Confirmation including, without limitation, post-petition employee wages and benefits, post-petition accounts payable, etc.

2.20 "Pending Administrative Expense" means any cost or expense of the Estate that may be allowable under § 503(b) of the Bankruptcy Code and is not barred but has not been allowed by final order of the Court.

2.21. "Person" shall have the meaning set forth in § 101(41) of the Bankruptcy Code.

2.22. "Petition Date" means June 22, 2018.

2.23. "Plan" means this plan of reorganization.

2.24. "Plan Interest Rate" shall mean 6.00%, or such other amount as the Court may determine at the Confirmation Hearing.

2.26. "Pro Rata" means, with respect to Claims, at any time, the proportion that the Allowed amount of any Claim in a particular Class or Classes bears to the aggregate Allowed amounts of all Claims in such Class or Classes, unless the Plan provides otherwise.

2.27. "Schedules" means the schedules and statement of financial affairs filed by the Debtor on June 22, 2018 along with any subsequent amendments filed thereto prior to the Confirmation Hearing.

## ARTICLE 3

## TREATMENT OF ADMINISTRATIVE EXPENSES

3.1. *Ordinary Course Administrative Expenses.* After the Effective Date and unless otherwise agreed, Ordinary Course Administrative Expenses shall be paid when they become due in the ordinary course of the Debtor's (and the Reorganized Debtor's) business.

3.2 *Allowed Administrative Expenses.* Unless otherwise agreed, on the Effective Date, the Reorganized Debtor shall pay all Allowed Administrative Expenses which remain unpaid at Confirmation.

3.3 *Pending Administrative Expenses.* Unless otherwise agreed, on the day that a Pending Administrative Expense becomes an Allowed Administrative Expense, the Reorganized Debtor shall pay such Allowed Administrative Expense.

3.4 *U.S. Trustee Fees.* Unless otherwise agreed, on the Effective Date, the Reorganized Debtor shall pay all fees then owing to the U.S. Trustee. Any U.S. Trustee's Fees that become due between Effective Date and the entry of the final decree shall be paid by the Reorganized Debtor in accordance with 28 U.S.C. § 1930(a)(6).

# ARTICLE 4

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

4.1 *Class S1* shall consist of the Allowed Secured Claim of Regions Bank Term Loan and Line of Credit having an approximate combined pre-petition balance of $304,240.94 to the extent secured by its pre-petition lien on the Debtor's Property. Provided that Regions Bank accepts and does not object to the Plan, then the Regions Bank Allowed Secured Claim will be paid by the Reorganized Debtor commencing on the date that is 30 days after the Effective Date and continuing on the same date of each successive month, in the amount of $7,500.00, continuing until all monthly payments have been made (such payments being sufficient to pay the Allowed Secured Claim in full with interest at the Plan Interest Rate). The Reorganized Debtor may at its option prepay any remaining balance on the Class S1 claim, together with all accrued interest through the date of payment, at any time. On the Effective Date, any default on the obligations comprising the Allowed Secured Claim shall be deemed cured by the Reorganized Debtor.

4.2 *Class S2* shall consist of the Allowed Secured Claim of OnDeck Capital having an approximate pre-petition balance of $118,038.36 to the extent secured by its pre-petition lien on the Debtor's Property. This Claim shall be paid after the *Class S1 Claim* is paid in full, and once the holders of Claims with greater priority in right of payment have been satisfied (i.e., subject to the limitations and priorities described in Article 3 and Section 4.1 above), provided that OnDeck Capital accepts and does not object to the Plan, then the OnDeck Capital Allowed Secured Claim will be paid by the Reorganized Debtor to the holders of Allowed S2 Claims in monthly

payments by the Reorganized Debtor commencing on the date that is 30 days after the Class S1 Allowed Secured Claim is paid in full and continuing on the same date of each successive month, in the amount of $7,500.00, continuing until all monthly payments have been made (such payments being sufficient to pay the Allowed Secured Claim in full with interest at the Plan Interest Rate). The Reorganized Debtor may at its option prepay any remaining balance on the Class S2 claim, together with all accrued interest through the date of payment, at any time. On the Effective Date, any default on the obligations comprising the Allowed Secured Claim shall be deemed cured by the Reorganized Debtor.

4.3 *Class U1* shall consist of all Disputed Unsecured Claims of creditors who asserted a prepetition perfected security interest. The Reorganized Debtor will repay all Allowed Class U1 claims by paying the balance of the capped claim amount. These claims shall be paid after the *Class S1 and S2 Claims* are paid in full, and once the holders of Claims with greater priority in right of payment have been satisfied (i.e., subject to the limitations and priorities described in Article 3 and Section 4.1 through 4.2 above), within 5 years after the Effective Date, with interest at the Plan Interest Rate.

4.4 *Class U2* shall consist of all non-insider general Allowed Unsecured Claims. These claims shall be paid after the *Class S1, S2 and U1 Claims* are paid in full, and once the holders of Claims with greater priority in right of payment have been satisfied (i.e., subject to the limitations and priorities described in Article 3 and Section 4.1 through 4.3 above), within 5 years after the Effective Date, with interest at the Plan Interest Rate.

Once the holders of Claims with greater priority in right of payment have been satisfied (i.e., subject to the limitations and priorities described in Article 3 and Section 4.1 through 4.3 above), the Reorganized Debtor will repay all Allowed U2 Claims by paying *Pro Rata* in relation to all *Class U2 Claims* by the Reorganized Debtor commencing on the date that is 30 days after the Effective Date and continuing on the same date of each successive month, in the appropriate monthly *Pro Rata* amount from the $7,500.00 monthly payment in the Plan, continuing until 5 years after the Effective Date, with interest at the Plan interest rate. These amounts far exceed the amount said *Class U2* creditors might anticipate receiving under a liquidation.

4.5 *Class T1* shall contain only the Disputed Claims of the IRS. Currently, the IRS has filed proof of claims in the amount of $8,003.02 [Claim #2] and $5,000 [Claim #27]. Informally, the Debtor understands that the IRS will be amending or withdrawing those claims prior to confirmation. Nevertheless, if either of the claims become an Allowed Secured Claim, it shall be paid in regular quarterly payments with interest at the Plan Interest Rate, in an amount sufficient to fully amortize the claim(s) over the five years following the Effective Date.

4.6 *Class T2* shall contain only the Disputed Claims of the Texas Comptroller of Public Accounts. Currently, the Texas Comptroller of Public Accounts has filed a proof of claims in the amount of $4,400.00 [Claim #16] and $2,063 [Claim #34]. Informally, the Debtor understands that the Texas Comptroller of Public Accounts will be amending or withdrawing one or both of the claims prior to confirmation. Nevertheless, if either of the claims becomes an Allowed Secured Claim, it shall be paid in regular quarterly payments with interest at the Plan Interest

Rate, in an amount sufficient to fully amortize the claim(s) over the five years following the Effective Date.

4.7 *Class D1* shall contain only the Disputed Claim of Credibility Capital 1669 LOC to the extent and in the amount, it is ultimately determined to be an Allowed Secured Claim through the claims allowance process. Creditor Credibility Capital 1669 LOC has not filed any Proof of Claim and to the extent Credibility Capital 1669 LOC asserts it has a claim against Debtor, the Debtor asserts that any claim balance is much less than would likely be claimed. The Debtor shall not be obligated to make periodic payments on any such claim.

4.8 *Class E1* shall contain only the interests of Debtor as a Reorganized Debtor in any property of the estate so long as there is a legal interest in any such property. No distribution shall be made to the Debtor from the Debtor's $7,500.00 monthly Plan distribution.

## ARTICLE 5

## IMPAIRMENT OF CLAIMS

All classes are impaired under the Plan, and hence entitled to vote on the Plan.

## ARTICLE 6

## SPECIAL PROVISIONS FOR DISPUTED CLAIMS

If, when a distribution is required under the Plan, a Disputed Claim has not been resolved, then the Reorganized Debtor shall set aside and hold that amount that would have been distributed had Disputed Claim been an Allowed Claim until the Disputed Claim is disallowed or becomes an Allowed Claim. Upon becoming an Allowed Claim, the Reorganized Debtor shall pay the held-back amount to the claimholder. If disallowed, the distribution amount will be used

by the Reorganized Debtor for later distribution to holders of Allowed Claims as provided for under the Plan.

## ARTICLE 7

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

7.1 *Continuation of Business.* The Reorganized Debtor shall continue its pre-petition/pre-confirmation business operations including developing the Debtor's existing Projects.

7.2 *Payments Upon Confirmation and Payments Due.* The Reorganized Debtor shall use pre- petition/pre-confirmation business operations income to pay all amounts required under the Plan. A budget supporting a monthly distribution of $7,500.00 shall be filed with the Court, supported by Debtor's monthly financial reports.

The Debtor shall distribute $7,500.00 monthly to creditors, pursuant to the terms of this plan. Such amount shall hereafter be referred to as the Monthly Distribution. If any Monthly Distribution exceeds $7,500.00 total, then at the sole discretion of the Debtor the balance of the distributed amount greater than $7,500.00 may be applied to the following Month(s)' Distribution(s) or shall accelerate the Debtor's plan. All distributions shall be made according to the terms herein. This plan is estimated to be completed within 60 months from the date of the first distribution. The first distribution shall take place in the first month after the plan is confirmed and distributions shall take place on the 25th day of each month thereafter until completion of the plan.

7.3 *Adequate Protection Payments.* In the event that the Reorganized Debtor is required to make any adequate protection payments to the holders of Allowed Secured Claims that come due between the Petition Date and the Effective Date, such adequate protection payments shall be credited, other than the portion necessary to compensate the recipient for post-petition, pre-confirmation interest at the non-default note rate, to reduce the amount of Allowed Secured Claims on the Effective Date.

7.4 *Post-Confirmation Plan Obligations and Operating Expenses.* The Reorganized Debtor shall pay post-confirmation obligations under the Plan and ongoing debts incurred in the ordinary course of the Reorganized Debtor's business from post-confirmation earnings, and, if necessary, subsequent loans, capital contributions, or the sale of additional membership interests.

7.5 *Prohibition on Distributions of Profits.* The Reorganized Debtor shall be prohibited from making any distribution of profits on account of membership interests until all claims have been paid in full.

7.6 *Prohibition on Non-voting Equity.* The Reorganized Debtor shall be prohibited from issuing non-voting membership interests.

7.7 *Post-Confirmation Professional Fees and Costs.* The Reorganized Debtor shall pay fees and expenses incurred post-Confirmation by its professionals (including, with limitation, those employed during the pendency of this case) in the ordinary course of the Reorganized Debtor's business. The Reorganized Debtor and its professionals shall not be required to obtain authorization for such payments under applicable provisions of the Bankruptcy Code governing employment and payment of professionals in a case.

7.8 *Post-Effective Date U.S. Trustee Fees.* After the Effective Date, the Reorganized Debtor shall timely pay all fees required pursuant to 28 U.S.C. § 1930, until a final decree is entered, or the case is closed or dismissed.

## ARTICLE 8

## LEASES AND EXECUTORY CONTRACTS

8.1 Leases and Executory Contracts to be Assumed. Upon the Effective Date, all leases and executory contracts to which the Debtor is party shall be deemed rejected (unless previously deemed rejected pursuant to 11 U.S.C. § 365). A party to a lease or executory contract that is rejected under this provision, and claims damages arising by such rejection, must file a proof of Claim arising from such rejection within 21 days after entry of the Confirmation Order. Failure to file a proof of Claim by this deadline will result in disallowance of the Claim.

## ARTICLE 9

## PAYMENTS

9.1 *Manner of Payment.* Unless other mutually acceptable arrangements are made between the Reorganized Debtor and the holder of an Allowed Administrative Expense or Allowed Claim, the Reorganized Debtor shall make payments required hereunder by check which will be mailed (first-class, postage prepaid) to the holder of the Allowed Claim or Allowed Administrative Expense. A payment shall be deemed made when mailed.

9.2 *Right to Rely on Information.* The Reorganized Debtor shall be entitled to rely on the addresses contained in the United States Bankruptcy Court's official Mailing Matrix in making payments required hereunder. Every holder of an Allowed Unsecured Claim has the duty to

ensure that its address is listed correctly. The Reorganized Debtor may, but shall have no duty to, search for, obtain, or make corrections to contact and mailing information in the absence of correction by the holder of an Allowed Claim.

9.3 *Forfeiture of Payments*. Holders of Allowed Claims or Allowed Administrative Expenses shall be deemed to have forfeited their right to a payment hereunder if (a) a payment check is returned as undeliverable, as having an incorrect address, or the like, and such party does not contact the Reorganized Debtor within 90 days of the check being originally mailed, or (b) a payment check is not paid by the payor bank within 90 days after it is mailed.

## ARTICLE 10

## BAR DATES, DEADLINES, OBJECTION TO CLAIMS

10.1 *Administrative Expense Bar Date*. Unless an earlier date is ordered by the Court, the bar date for the filing of applications for allowance of any pre-Confirmation administrative expense (except for those of the Debtor's professionals and taxing entities) under § 503(b) of the Bankruptcy Code shall be the first date set for the Confirmation Hearing. The Internal Revenue Service, the Texas Comptroller of Public Accounts and the Utah State Tax Commission shall have 45 days after the relevant return is filed with the insolvency departments of those taxing authorities to file an application for allowance of any pre-Confirmation administrative expenses. For the Internal Revenue Service, these returns may include quarterly Form 941 returns, Form 940 and a Form 1041.

10.2 *Claims Bar Date*. The bar date for filing proof of claims is October 31, 2018. Except as otherwise provided herein, any proof of Claim filed after that date shall be deemed disallowed

unless the holder of such Claim has obtained an order of the Court allowing the late-filing of the Claim that is entered before the Confirmation Hearing.

10.3 *Amendment of Claims.* Except as otherwise provided for herein, no proof of Claim may be amended to increase the amount of any Claim after the Confirmation Hearing.

10.4 *Objections to Claims.* Except as otherwise provided for herein, objections to Claims must be filed no later than 60 days after the Effective Date. Any party in interest with a financial stake in the outcome of an objection to a Claim may object to such Claim or join in the prosecution of any pending objection to such Claim.

## ARTICLE 11

## EFFECT OF CONFIRMATION

11.1 *Binding Effect.* Upon the Effective Date, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, creditors, and all parties in interest regardless of whether or not such persons or entities have impaired claims under the Plan or whether or not such persons or entities have accepted the Plan.

11.2 *Vesting of Property.* Property of the Estate shall vest in the Reorganized Debtor upon the Effective Date free and clear of all Claims and interests except as provided for or retained under the Plan.

11.3 *Discharge.* Upon the Effective Date, the Debtor shall receive a discharge of any debt that arose before Confirmation, and all creditors and parties in interest shall be permanently enjoined from commencing or pursuing any action against the Reorganized Debtor other than to enforce the obligations created or preserved under this Plan.

## ARTICLE 12

## GUARANTOR AND THIRD-PARTY LIABILITY

As it is the intent of the Debtor and its principals to propose a plan that pays all outstanding claims in full or at amounts agreed to by the parties, payment according to the terms contained herein shall fully satisfy both the Debtor's obligation and any Guarantor's obligation for the debts treated by the plan.

## ARTICLE 13

## MODIFICATION OF PLAN

13.1 *Modification Prior to Confirmation.* The Debtor may modify the Plan at any time before Confirmation provided that the Plan, as modified, meets the requirements of the Bankruptcy Code. If the Debtor files a modification of the Plan with the Court, the Plan as modified will become the Plan.

13.2 *Modification After Confirmation.* The Debtor may modify the Plan at any time after Confirmation and before substantial consummation provided that the Plan, as modified, meets the requirements of the Bankruptcy Code. The Plan, as modified, after Confirmation will become the Plan only if circumstances warrant such modification and the Court, after notice and hearing, confirms the Plan as modified. If the Court makes such a determination and approves such modification, it shall be deemed accepted by all holders of claims that have previously accepted the Plan.

## ARTICLE 14

## DEFAULT

14.1 *Rights of Secured Creditors.* A default shall occur with respect to payment of an Allowed Secured Claim if a payment is not made and/or cured according to the terms of the Reorganized Debtor's Obligations as modified under the Plan. Upon default, the holder shall be entitled to enforce its modified debt and lien rights according to its loan documents and under any applicable law.

14.2 *Rights of Unsecured Creditors.* A default shall occur with respect to payment of an Allowed Unsecured Claim or Allowed Administrative Expense if the Reorganized Debtor fails to make any payment or distribution required under the Plan. In the event of such a default, the aggrieved party shall be required to provide written notice of such default to the Reorganized Debtor. The Reorganized Debtor shall have ten (10) days after its actual receipt of such written notice to cure the default. Absent cure, the holder of an Allowed Claim or Allowed Administrative Expense shall be entitled to accelerate all amounts due and enforce its debt as modified under the Plan, less any amounts that have been paid under the Plan.

## ARTICLE 15

## RETENTION OF JURISDICTION

The Court shall retain jurisdiction after Confirmation for the purposes of: (a) fixing an allowance of any Administrative Expense; (b) hearing and determining any objection to a Claim; (c) hearing and determining all causes of action, controversies, disputes, or conflicts that were pending before Confirmation; (d) correcting any defect, curing any omission, or reconciling any

inconsistency in the Plan or order of confirmation as may be necessary to carry out the purpose and intent of the Plan; (e) issuing any order necessary to implement the Plan, including without limitation, such declaratory and injunctive orders as are appropriate to protect the Estate or Reorganized Debtor from actions of creditors, or other parties in interest; (f) hearing and determining any dispute relating to the terms or implementation of the Plan or to the rights or obligations of any parties in interest with respect thereto; (g) confirming a Plan after modification pursuant to § 1127(b) of the Bankruptcy Code; and (h) entering orders concluding and terminating this bankruptcy case.

## ARTICLE 16

## FINAL DECREE

The Reorganized Debtor shall seek a Final Decree under § 350 of the Bankruptcy Code (and Bankruptcy Rule 3022) as soon as practicable after the estate is fully administered. The Reorganized Debtor need not make all payments required under the Plan in order to establish substantial consummation.

## ARTICLE 17

## CLAIMS RETAINED UNDER THE PLAN

The following claims belonging to the Debtor or the Estate shall be retained by the Reorganized Debtor: (1) any and all claims that existed pre-petition relating to any account receivable; (2) any and all compulsory or permissive counterclaims relating to any Disputed Claim; and (3) any claims raised in any state court proceeding, adversary proceeding, or contested matter that is pending at the time of Confirmation or was pending as of the Petition

Date. Any claim not retained shall be deemed abandoned upon Confirmation. The Reorganized Debtor reserves the right to transfer these retained claims to its members.

## ARTICLE 18

## MISCELLANEOUS

18.1 *Calculation of Time Periods.* The calculation of time periods herein shall be governed by Federal Rule of Bankruptcy Procedure 9006.

18.2 *Notices to the Reorganized Debtor.* Notices to the Reorganized Debtor shall be deemed proper only if delivered or mailed to:

>	Fueld Films, Inc.
>	Brady Anderton, President
>	3005 South LaMar Blvd.
>	Suite D109, #446
>	Austin, TX  78745

18.3 *Reports.* The Reorganized Debtor shall file a post-confirmation summary report in conformity with Local Rule 2081-1(c) within 90 days of the Effective Date.

DATED this 20th day of May 2019.

**FUELD FILMS, INC.**

*/s/ Brady Anderton*
Brady Anderton Its: President

**SAGE LAW PARTNERS, PLLC**

*/s/ Kent L. Christiansen*
Kent L. Christiansen
*Attorneys for Debtors*